SCHOTT, Chief Judge.
The issue in this case is whether a jury verdict of $15,000 for a herniated disc with no nerve involvement and no probability that surgery will be required in the future is so inadequate as to constitute an abuse of the jury’s discretion.
Plaintiff sustained neck and back injuries in an automobile accident on April 22, 1985. He first saw an internist who administered heat treatment and ultrasound for a short period and referred him to Dr. Gessner, an orthopedist.
Plaintiff’s first visit with Dr. Gessner was on October 16, 1985. Plaintiff complained of neck and back pain. He had limited motion and spasms in the cervical and lumbar spine. Dr. Gessner diagnosed cervical and lumbar strain and prescribed physiotherapy, bed rest, and medication. Plaintiff returned to Dr. Gessner on December 27, 1985, April 25 and July 23, 1986, May 11 and November 18, 1987 and March 2, 1988. On the basis of these examinations, along with a CT scan in 1985 and an MRI in 1988, Dr. Gessner diagnosed a herniated disc at the L4-5 level and gave the *824 following testimony as to the effect this would have on plaintiff in the future:
Q Doctor, just from your advantage point, in what ways would a herniated disc restrict a person from just normal everyday routine?
A Well, I think my advice to the patient is to try to live as normal as possible. You got to guard your recreational activities. You can’t go out and play tackle football, contact sports, things like that, but you have to constantly be aware that you have a problem and you have to be cognizant of that, and I would advise caution with lifting, caution with bending, squatting, stooping, kneeling, crawling, climbing ladders. Long drives, sitting for long periods of time seem to aggravate low back conditions, especially disc conditions. And mild analgesics, I wouldn’t advise anyone for long periods of time taking anything stronger than Tylenol or aspirin. If he started being dependent on stronger analgesics, you would have to consider surgery.
Q Is Mr. Messina scheduled to see you again, Doctor?
A I don’t believe.
Q What would be his course of treatment henceforth?
A Well, he impressed me as being an intelligent man and he impressed me as being somebody that was able to live with his limits. I think as long as he’s able to do that, I think it would be a conservative approach. If he should develop more radicular pain, more left leg pain, if he started developing weaknesses in his legs, reflex changes, bladder problems or other neurological manifestations of the disc, I think you have to entertain surgery.
Q So, at that time you would reconsider surgery and perhaps discuss that with Mr. Messina?
A Yes, sir.
Dr. Gessner stated that there was never an indication of nerve root involvement, the herniated disc has remained stable, conservative treatment was in order, and he (the plaintiff) was told to return to him on an as needed basis.
Plaintiff did not produce his internist and he proved only about $300 of medical expenses with Dr. Gessner. His testimony was singularly devoid of subjective complaints of pain. Consequently, the testimony of Dr. Gessner, quoted above, is about the only thing in the record by which the jury verdict may be evaluated.
Defendants argue for affirmation on the basis that plaintiff saw Dr. Gessner only six times in three years, incurred minimal medical expenses, and suffered no nerve root involvement from the herniated disc. They also question causation, especially since, in giving Dr. Gessner the history of his case, he said the accident had happened in March rather than April and he failed to mention a 1975 accident in which he suffered injuries. Defendants contend that the award of $15,000 was a reflection of the jury’s low assessment of plaintiff’s credibility.
On the other hand, the record does not provide a basis to deny recovery on the theory that something other than this accident caused plaintiff’s injuries and it establishes that plaintiff has a herniated disc which is permanent and which will have a significant effect on his lifestyle and his activities for the duration of his life. Considering that this is about as minimal a herniated disc as can be, an award of only $15,000 is abusive of the jury’s discretion and an award of $35,000 is the lowest amount the jury could have awarded within the wide range of discretion it had.
In reaching this conclusion we have disregarded plaintiff’s argument concerning the trial judge’s instructions or his speculation that the jury erroneously seized upon Dr. Gessner’s estimate of $15,000 for future surgery in making the award. We rest our conclusion on the simple basis that the jury abused its discretion in returning such a minimal verdict for a herniated lumbar disc.
Accordingly, the judgment is amended insofar as the amount of the judgment against Allstate Insurance Company, Lou Ethel Ford’s liability insurer, is increased *825 to $25,000. That portion of the judgment dismissing plaintiff’s claim against State Farm Mutual Automobile Insurance Company, plaintiffs uninsured motorist insurer, is reversed and set aside and there is judgment in favor of plaintiff and against defendant, State Farm, in the amount of $10,000. Legal interest is awarded to plaintiff on both amounts from date of judicial demand until paid.
AMENDED AND AFFIRMED IN PART; REVERSED IN PART AND RENDERED.